Decided at Pendleton, July 18, 1896.

## BANK OF IDAHO v. MALHEUR CO.
(45 Pac. 781; 35 L. R. A. 142.)

1. MECHANICS' LIENS—BRIDGES—EXECUTION.—Property exempt from sale on execution is not subject to mechanics' liens, unless the law conferring the special remedy so declares; thus, a bridge that is part of a public highway, not being liable to judicial sale, is not subject to mechanics' liens, and this though Hill's Code, § 3669, mentions bridges in the enumeration of property subject to such liens. In the absence of the word "public" the statute will be presumed to apply only to private bridges.

2. MECHANICS' LIENS ON PUBLIC BRIDGES*—EXEMPTION—PUBLIC POLICY.—No lien for material can attach to a county bridge, either before or after its acceptance, for, under sections 3669 and 3670, Hill's Code, the lien would attach to the land on which the bridge is constructed, and this, not being subject to execution (Hill's Code, § 282, subd. 6), is not subject to a lien. Furthermore, the bridge is public property, and exempt from mechanics' liens on grounds of public policy: *Portland Lumbering Co.* v. *School Dist. No. 1,* 13 Or. 283, approved and followed.

3. POWERS OF COUNTY COURTS.—County Courts, being of special and limited jurisdiction, have only those powers conferred by statute (*Wren* v. *Fargo,* 2 Or. 19; and *Kelly* v. *Multnomah County,* 18 Or. 356, cited and applied), and cannot pay off or take assignments of claims against creditors of the county, so as to succeed to the rights of such creditors.

From Malheur: MORTON D. CLIFFORD, Judge.

This is an action to recover an alleged balance claimed to be due on a chose in action assigned to plaintiff, The First National Bank of Idaho. The facts are that on July 6, 1894, the defendant entered into a contract with the

---

*NOTE.—This case is reprinted in 35 L. R. A. 142, with a valuable collection of authorities showing the law regarding Mechanics' Liens on Public Property. In California public buildings are not subject to liens: *Mayrhofer* v. *Board of Education,* 23 Am. St. Rep. 451, and note. The property of quasi public corporations, such as electric light or water companies operating under municipal franchises, may be subjected to liens for supplies or labor: *Badger Lumber Co.* v. *Marion Water Co.,* 30 Am. St. Rep. 306. This subject is thoroughly reviewed in the case of *National Foundry* v. *Oconto Water Co.* (Wis.), 52 Fed. 43 (S. C. 59, Fed. 19), where a lien was enforced against the entire pipe lines and pumping works of a company organized for and actually engaged in supplying water to a city.—REPORTER.

Bullen Bridge Company, a corporation, by the terms of which the latter, in consideration of the payment of $2,000, and the agreement to pay $2,000 at the next term of the County Court after the completion and acceptance thereof, constructed a bridge for the defendant over the Malheur River near the town of Vale; that on December 5 of said year the company assigned its claim for the $2,000 deferred payment to the plaintiff, and requested the defendant to pay the same to its assignee when it became due; that on February 2, 1895, and before the bridge had been accepted, the material men, and laborers, who had furnished material for and performed labor in its construction, claimed liens thereon, and filed notices of their respective claims in the office of the clerk of said county, amounting in the aggregate to $1,469.76; that on March 7, the bridge having been accepted, the defendant paid to said laborers and material men the amount of their respective claims, took an assignment of their alleged liens, and on May 8 paid to the plaintiff $530.24, as the balance due under the contract, whereupon this action was brought to recover the amount so paid to the laborers and material men. The defendant, after denying the material allegations of the complaint, alleges, in substance, that, having an equitable interest in the bridge by reason of the payment of $2,000, it was compelled to and did pay the said claims for material and labor to prevent the threatened foreclosure of the liens so claimed therefor, and the sale of its interest in the bridge. It is also alleged that on January 24, 1895, the plaintiff being cognizant that the laborers and material men had not been paid, and as the agent and claiming to be the assignee of the Bullen Bridge Company, requested the defendant to hold a sufficient amount of the balance due under the contract for the payment of and to satisfy said claims, until the Bullen Bridge Company should pay the same; that neither the

Bullen Bridge Company nor the plaintiff has ever paid any part of the amount so due the lien claimants, and, after waiting a reasonable time therefor, the defendant was compelled to and did settle and discharge said liens, and paid to the plaintiff, prior to the commencement of this action, the balance due under the contract; and that, by reason of the premises and of the facts hereinbefore stated, the plaintiff is estopped from claiming any money as due under the contract, and from maintaining this action. A motion and demurrer filed by plaintiff having been overruled and denied, it filed a reply denying that said bridge was subject to any mechanics' liens, and putting in issue the other allegations of new matter contained in the answer, and upon the issue thus joined a trial was had, resulting in a verdict and judgment for the defendant, from which judgment the plaintiff appeals.

REVERSED.

For appellant there was a brief by *Messrs. John T. Morrison, Geo. H. Stewart,* and *King & Saxton,* with an oral argument by *Mr. Stewart.*

No appearance or brief for respondent.

MR. JUSTICE MOORE, after stating the facts in the foregoing language, delivered the opinion of the court.

1. The plaintiff's counsel contends that the bridge was the property of Malheur County, and as such was not subject to mechanics' liens, and that the court erred in admitting the claims therefor in evidence. If it be conceded that the county, at the time the notices of lien were filed, was the owner of the bridge, no lien could possibly attach thereto; for the mode of enforcing this statutory remedy is by sale upon execution (Hill's Code, § 3677), and the statute expressly provides that all county

property shall be exempt from such judicial process: Code, § 282, subd. 6.   The duty of maintaining highways devolves upon the state in its sovereign capacity, but is delegated in part to the several counties therein, which are authorized by law, as trustees for the public, to levy and collect taxes to be expended in the performance of the duty thrust upon them.   A public bridge is a part of the highway, and, whether constructed by the state or any of its public corporations, is held in trust for a public use, and the statute, emphasizing a rule of public policy, wisely prohibits the sale of such property upon execution. The reason assigned for the existence of this rule, in the absence of a statute upon the subject, is that if the property held by a municipal corporation in trust for the public were subject to sale upon execution, the title thereto might become vested in a private person, thereby depriving the public of its right to the use of such property, and public policy forbids that the public shall be deprived even temporarily of such use:   *Leonard* v. *City of Brooklyn*, 71 N. Y. 498 (27 Am. Rep. 80); *Portland Lum. & Mfg. Co.* v. *School District No. 1*, 13 Or. 283 (10 Pac. 350).   The rule is well settled that property which is exempt from sale under execution, upon grounds of public policy, is not within the operation of or subject to the mechanics' lien law, unless the statute conferring this special remedy so expressly declares:   *Williams* v. *Controllers*, 18 Pa. St. 275; *National ʃ ʌndry & Pipe Works* v. *Oconto Water Co.*, 52 Fed. 43; *Whiting* v. *Story Co.*, 54 Iowa, 81 (6 N. W. 137, 37 Am. Rep. 189); *Ripley* v. *Gage Co.*, 3 Neb. 397.   Judge Dillon, in his work on Municipal Corporations (3d Ed.), § 577, in stating this rule says: "Property owned by a municipal corporation and used for public purposes cannot be sold by virtue of an execution issued on a judgment rendered against the corporation. As one of the results of this general rule, there can be no

mechanics' lien against such property. Thus, county bridges, schoolhouses, courthouses, and other public buildings which cannot be sold under an execution cannot be sold on foreclosure of a mechanics' lien; it is only such property as can be sold under judicial process that is subject to such liens." In *Board of Commissioners* v. *Norrington*, 82 Ind. 190, it is held that public policy forbids either the acquisition or enforcement of a mechanics' lien against a public bridge. So, too, in *Loring* v. *Small*, 50 Iowa, 271 (32 Am. Rep. 136), which was a suit to enforce a mechanics' lien against a bridge constructed for a county, DAY, J., in rendering the decision of the court says: "We feel no hesitancy in holding that the property in question in this case cannot be made subject to a mechanics' lien, in view of the statute which exempts it from execution." Our statute enumerates bridges in the class of property which is subject to mechanics' liens (Hill's Code, § 3669); but, since a bridge may be constructed by a private person for his own use, the mere adoption of the word in the statutory classification does not necessarily mean a public bridge, and public policy demanding that a bridge built by a county on a public highway should be open to the public, which might be denied the use thereof if it could be sold under execution, compels us to hold that without the use of the qualifying word "public," no lien can attach to or be enforced against a bridge of that character.

2. The bridge not having been accepted by the county at the time the lien claims were filed, the question is presented whether the defendant had such an interest in the proprty sought to be charged therewith as would preclude the claimants from obtaining the benefits to be derived from the mechanics' lien law. The lien provided by the statute attaches to the building or other improvement in consequence of the labor bestowed upon it or the material that has entered into and become a part of the

structure, which, being permanently attached to and becoming a part of the soil upon which it rests, the lien, by relation, attaches to the land also, and if the person who caused the erection of the structure does not own the land, the lien binds whatever interest he has therein: Hill's Code, §§ 3669 and 3670. The County Court of Malheur County had authority to provide for the erection of a public bridge upon any highway established by public authority (Code, § 896, subd. 4), and could apply any money in the county treasury, not otherwise appropriated, toward defraying the expense of building a bridge on any county road within its borders: Code, § 4140. These sections of the statute impliedly prohibit a county from constructing a bridge not on a county road, or expending public money in payment thereof, and, as the law presumes that official duty has been regularly performed (Code, § 776, subd. 15), it must be presumed from the provisions the County Court made for the erection of the bridge, and the payment of $2,000 on account thereof, that it was built on a county road. This being so, if the liens attached to the bridge, they bound the defendant's interest in the county road, which could be sold on the foreclosure of the liens; but, as the county road is exempt from execution, it follows that the liens never attached to the bridge, and hence the defendant acquired no interest in the claims therefor by their assignment to it, and the court erred in admitting them in evidence.

3. It is contended that the County Court had no authority to settle with the lien claimants, nor could it offset any part of the amount so paid against the plaintiff's demand, and that the court erred in its instruction to the jury to the effect that, if the bridge company permitted liens to be perfected against the bridge before it was accepted, the County Court could discharge the same and charge the amount so paid to the plaintiff, as the assignee

of the Bullen Bridge Company. The County Courts of the several counties of this State, in the transaction of county business, are courts of special and limited jurisdiction, and derive their authority from the statute conferring it. In *Wren* v. *Fargo*, 2 Or. 19, PRIM, J., in referring to the authority of a board of county commissioners, says: "Their powers and jurisdiction are limited by statute; and any official act of theirs, not authorized, is void." The right of a County Court, therefore, to enter into any contract or incur any obligation on behalf of the county, must be found in the statute, either expressly or by necessary implication: *Modoc County* v. *Spencer*, 37 Pac. 483; *Kelly* v. *Multnomah County*, 18 Or. 356 (*22* Pac. 1110). Turning to the statute, we are unable to discover any provision that authorizes a County Court to pay off or take an assignment of claims against its creditor, or offset them against his demand. Hill's Code, § 896, subd. 10, provides that the County Court has authority to compound for or release in whole or in part any debt or damages arising out of contract due the county, and for the sole use thereof, upon such terms as may be just and equitable. Black, in his Law Dictionary, defines the word "compound" as follows: "To compromise; to effect a composition with a creditor; to obtain discharge from a debt by the payment of a smaller sum." The lien claimants were not creditors of nor were their claims enforceable against the county, and, no authority being found in the statute therefor, it could not legally discharge the same, or take an assignment thereof; but, having done so, these claims could not be offset against the plaintiff's demand. The county, upon principle, must necessarily have acquired a vested right in all the material used in the construction of the bridge when such material was placed in position, and thus became permanently attached to the soil, and from that moment the property, being exempt from exe-

cution, could not become subject to mechanics' liens.   If
this were not so, the public road upon which the structure
rested might be sold upon the foreclosure of any lien
upon the bridge prior to its acceptance, thereby depriving
the public of its use of the highway.   If the bridge was
never accepted by the county, the structure would doubt-
less be removed, but, until the material of which it was
constructed had been severed from the land, it could not
become subject to mechanics' liens.   The evidence con-
clusively shows that the bridge was nearly if not quite
completed before the lien claims were filed, and this being
so the court erred in giving the instruction of which the
plaintiff complains.

The plaintiff, prior to the filing of said lien claims, sent
to the county clerk of said county the following telegram:

"Boise City, Idaho, 1/24, '95.
To C. W. Platt, Vale, Oregon (mail, Ontario, Oregon):

Hold sufficient to pay labor until Bullen settles same.
Send us balance

(Signed)       FIRST NATIONAL BANK OF IDAHO."

It is contended that this message authorized the
County Court to pay said claims, and constitutes an
estoppel against the maintenance of this action.   The re-
quest to hold a sufficient amount of the $2,000 due under
the contract cannot be construed as a direction to pay the
laborers.   The telegram, in our judgment, contains no
elements, either of contract or misrepresentation, that
would constitute an equitable estoppel against the plaintiff
or prevent it from maintaining this action.   It follows that
the judgment is reversed, and the cause remanded for a
new trial.

REVERSED.